## NUISANCE IN A STREET BY PERMISSION OF COUNCIL.

[Circuit Court of Lorain County.]

ELYRIA v. LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.*

Decided, May 27, 1902.

*Municipal Corporations—Control of Council Over Streets a Continuing Power—Agreement by Council to an Obstruction Seriously Interfering with Use of Street Invalid.*

Municipal authorities can not contract in such wise that a nuisance may be maintained in the street, and notwithstanding it may have been erected in accordance with an agreement entered into with council, injunction will lie against the further maintenance of an overhead railroad bridge abutment, which occupies a part of the street and is seriously interfering with the use of the street.

MARVIN, J.; CALDWELL, J., and HALE, J., concur.

The case of the city of Elyria against The Lake Shore & Michigan Southern Railway Company is tried to us on appeal from the judgment of the court of common pleas.

The action is brought by the city of Elyria against the defendant railroad company, the purpose of which, and the prayer of which is for an injunction to restrain the defendant from further continuing and maintaining certain abutments which it has built at the crossing by the railroad of West River street in the city of Elyria, the point being where West River street is intersected by Huron street and West Bridge street, and for an order requiring the railroad commpany to remove those abutments.

The plaintiff, the city of Elyria, is the successor of the village of Elyria, and is, as the village was, a municipal corporation. poration.

The defendant is a corporation owning and operating a railroad; its tracks pass through what is now the city of Elyria. The railroad company for more than fifteen years last past has maintained its railroad track passing through this municipality, and its track during all that time has crossed West River street at the intersection of West River street with Huron

---

*Affirmed by the Supreme Court, January 19, 1904 (69 Ohio State).

street and West Bridge street. The general direction of the railroad track is east and west, crossing the street, which runs north and south. Up to about February 20, 1890, the track of the railroad was maintained at the street grade. At the date last named the defendant changed its crossing at the point to an overhead crossing, to do which it put in large stone abutments on both the east and west sides of the street. These abutments narrow the street at this point to a width of forty feet; that is to say, it narrows the available traveled way of the street to a width of forty feet. The width of the street as it existed prior to this time was sixty-six feet.

There was some evidence introduced tending to show, or it was claimed tending to show that the street was but sixty feet, but we find from the evidence that the street, at the time to which attention has been called, was sixty-six feet in width. Each of these abutments from north to south is about twenty-nine feet in length.

There is a sidewalk along the easterly abutment above mentioned six feet in width. The easterly abutment above mentioned extends into the street as it existed prior to the making of such abutment but a little more than five feet at one point, and at the point where it encroaches least upon said street the encroachment is considerably less. The entire encroachment, except as made by the easterly abutment already mentioned, is of course made by the abutment on the west side of the street.

Since the construction of these abutments a street railroad has been laid along said West River street, under a franchise granted by the city of Elyria, and said street railroad is now in full operation, running cars at frequent intervals along said street and between said abutments.

The change of the crossing of defendant's road at the point named from a grade crossing to an overhead crossing became necessary for the proper use and operation of said railroad, but there was no imperative necessity for placing the abutments nearer to each other than the full width of the street, sixty-six feet.

Before the railroad company made the change at said cross-
ing it entered into what is in terms an agreement with the
municipal authorities as to the manner, terms and conditions
upon which said change might be made, and the construction
of the abutments heretofore mentioned, and the way in which
they are now maintained, is in substantial compliance with the
terms of said agreement.

If the municipal authorities had the lawful right to make
this agreement in such wise that the municipality should for-
ever be bound by it, then the petition must be dismissed.

It is said on the part of the railroad company that such
authority is vested in the municipal officers by Section 3283,
Revised Statutes, which reads:

"If it be necessary, in the location of any part of a railroad,
to occupy any public road, street, alley, way or ground of any
kind, or any part thereof, the municipal or other corporation,
or public officers or authorities owning or having charge thereof
and the company, may agree upon the manner, terms and con-
ditions upon which the same may be used or occupied; and
if the parties be unable to agree thereon, and it be necessary,
in the judgment of the directors of such company, to use
or occupy such road, street, alley, way or ground, such com-
pany may appropriate so much of the same as may be neces-
sary for the purposes of its road, in the manner and upon the
same terms as is provided for the appropriation of the prop-
erty of individuals."

Without reading further, that includes so much of the sec-
tion as it is claimed authorized the making of this contract
by the municipal authorities with the railroad company; and
that the agreement constitutes a binding contract between the
municipality and the railroad company.

This section has been construed in numerous cases. In *Rail-
road Co.* v. *Defiance,* 52 Ohio St., 262, the section was con-
strued, and the seventh clause of the syllabus of that case reads:

"An ordinance which in terms authorizes a railroad com-
pany to erect new bridges of a specified description over the
track of its railway where it crosses designated streets, the
bridges to be kept in repair by the company, does not divest
the municipal authorities of their control over the streets, nor

impair their power to improve the same, nor entitle the railroad company to perpetually maintain the bridges so constructed; but the ordinance and privilege granted by it are subject to a proper exercise by the municipal body of its power to improve the streets, and make such changes in the grades as may be necessary to subserve the public interest.''

In the opinion in the case pronounced by Judge Williams this language is used, beginning on p. 308:

''It may be observed that the extent of the authority conferred by this statute on municipal corporations is to agree with railroad companies upon the manner, terms and conditions upon which a street, etc., may be used and occupied by a railroad, 'if it be necessary in the location' of the railroad for any part of it to occupy said street, etc., and then they may agree for the use of so much of the street only as is necessary for the purposes of the railroad. This limitation is manifest from the provision that if the parties are unable to agree, the company may appropriate so much of the street as is necessary for the purposes of its road. The object of the appropriation is to acquire such use of the street, etc., as could have been granted by agreement; and no greater use can be obtained in the one mode than in the other; the right acquired is either limited to the use of so much of the street as may be necessary for the purposes 'of the railroad.' The statute, we think, does not contemplate the destruction of the street, or the cessation of its use by the public, or its withdrawal from the control and supervision of the proper municipal officers; nor is authority found in it for any agreement having such results. On the contrary, the statute recognizes the street so burdened with a railroad as a 'public street,' with all that term imports.''

Then attention is called to the next section, Section 3284, Revised Statutes, which requires when a street or stream, etc., shall be crossed by a railroad, by the track of a railroad, and it becomes necessary to divert the same, that is the street or stream, whatever it is that is crossed, that the company shall restore the street or alley or stream that is diverted to its former state of usefulness. That is, it shall be required to place the road or stream or whatever it has thus crossed or diverted from its location without unnecessary delay in such condition as not to impair its former usefulness. And in the opinion Judge

Williams holds that this is to be read in connection with the other section.

The same case, the case to which attention has just been called, of *Railroad Co.* v. *Defiance,* went to the Supreme Court of the United States, and is reported in *Wabash Railway Co.* v. *Defiance,* 167 U. S., 88.   On p. 486 in the opinion of the Supreme Court, delivered by Mr. Justice Brown, commenting on two Sections 3283 and 3284, Revised Statutes, he uses this language:

"Reading these two sections together, it is open to doubt whether Section 3283 is not confined to cases where the railroad runs along and upon the street, road or• alley, in• which case some kind of contract or agreement with the municipality would seem to be almost necessary for the mutual accommodation of the railroad and the public, who desire to retain the use of the street for ordinary travel.   The matter of crossing the street, however, is treated by Section 3284 as one of the necessary incidents of railroad construction; and all that is required is that the company, after having made the crossing, shall replace the road in such condition as not to impair its usefulness."

A further discussion of the two sections is found in *Zanesville* v. *Fannan,* 53 Ohio St., 605.   On p. 614 the court say, speaking of the duty imposed by the statute upon the municipal authorities to keep the streets open and free from nuisance:

"And those powers• and duties continue when a railroad company has placed its tracks in a public street, whether they were so placed under permission granted by the municipality or under an appropriation for that purpose.   In neither event are the municipal authorities divested of their powers, nor absolved from the performance of their duties.   Nor does Section 3283 contemplate that a railroad company, in the use of a street for the purposes of its road, under a right acquired in either of the modes provided, may destroy the same or create nuisances therein. · On the contrary, it contemplates that the company shall exercise its rights with proper regard to those of the public in the street, and that the street and its uses by the public shall be preserved and protected, with such additional use as may be necessary in the proper operation of the railroad, which is itself a means of public use.   If the permission to

occupy the street be granted by the municipal authorities, they may and should prescribe such reasonable regulations and conditions as will prevent the creation of nuisances and preserve and best protect the free and full use of the street by the public.''

Without reading further authorities, though there are many in line with these which are cited by counsel in their briefs, and quoted from, we hold that by this agreement entered into between the municipal authorities of Elyria and the railroad company, the municipal authorities were not relieved from the obligation to keep the streets open and free from nuisance, nor did the railroad company acquire the right to so occupy the street as to constitute a nuisance to the public.

In one of the cases it is said that the public authorities could not make such contract as to take away from the municipality the right to have the streets used for the purposes of a street.

The evidence is such that it can not be doubted that the construction of these abuments, as they are, constitutes serious interference with the use of the West River street or the streets which there intersect. And under the statutes which require the municipal authorities to keep the streets free from nuisance, and the proposition that the city can not contract in such wise that nuisances may be permitted in the street, it seems clear that the plaintiff is entitled to the relief here sought to the extent that it is necessary to relieve the street from such obstruction as seriously interfere with the use of the street by the public.

The encroachment, as has already been stated, is chiefly on the west side of the street, and if the abutment there should be removed to the line of the street, the street would probably be sufficient for all the present needs and rights of the public, and we have come to the conclusion, therefore, to require the railroad company to remove that abutment which is on the west side back to the line of the street, and a decree may be entered here as in the court below.

*W. W. Boynton* and *F. M. Stevens,* for plaintiff.

*E. G. Johnson,* for defendant.